Margaret MAYER, Individually, and as Executrix of the Estate of James E. Mayer, Deceased, Plaintiff,

v.

CORNELL UNIVERSITY, INC., David Blanton d/b/a Voyagers International, Horizontes Nature Adventures, Kenneth Rosenberg, and Laura Brown, Defendants.

No. 92–CV–220.

United States District Court, N.D. New York.

Dec. 5, 1995.

Lopinto Schlather, Solomon & Salk, Ithaca, NY (Raymond M. Schlather, of counsel), for plaintiff.

Thomas Mead Santoro, Office of University Counsel, Ithaca, NY, for defendants Cornell University, Rosenberg & Brown.

## MEMORANDUM–DECISION AND ORDER

McCURN, Senior District Judge.

On December 4, 1995, the court heard oral argument with respect to the November 29, 1995, letter of defendants Cornell University and Laura Brown (collectively referred to throughout as "Cornell"), requesting this court to revisit the issue of whether plaintiff Mayer is entitled to a jury trial. After oral argument the court gave some but not all of its reasons for concluding that plaintiff Mayer is not entitled to a jury trial on her remaining causes of action. At oral argument, the court mentioned that it would be issuing a memorandum decision and order fully setting forth its analysis of the jury trial issue, and following constitutes the court's decision in this regard.

### *BACKGROUND*

As the parties are well aware, whether plaintiff Mayer is entitled to a jury trial has been the subject, both directly and indirectly, of several prior motions in this case. Because Judge McAvoy's prior decisions in that regard are a part of the record, the court sees no need to repeat the entire history of this issue at this point. Suffice it to say that Judge McAvoy, to whom this case was originally assigned, most recently held that "both plaintiff's state survival action and his DOHSA claim will be submitted to the jury." Memorandum Decision & Order ("MDO") (N.D.N.Y. April 15, 1995) (McAvoy, C.J.) at 4, Docket Entry # 162. Defendant Cornell did not move for reconsideration of that order within ten days after its entry, as it had a right to do under Local Rule 7.1(g). Instead, with the permission of this court on November 29, 1995, Cornell submitted a letter via FAX wherein it seeks to have this court revisit the issue of whether plaintiff is entitled to a jury trial on her remaining two causes of action. A copy of this letter motion was also FAXed to plaintiff on November 29, 1995. The next day, on November 30, 1995, the court advised plaintiff's counsel and Cor-

nell's counsel, by telephone, that it would hear Cornell's motion for reconsideration on Monday, December 4, 1995, at 10:00 a.m. The court also gave plaintiff permission to respond in writing to this motion, and that was done.

Basically, it is Cornell's position that plaintiff is not entitled to a jury trial in this action because her only two remaining causes of action sound in admiralty, and traditionally there is no right to a jury trial in such actions. Plaintiff vehemently responds that she is entitled to a jury because, among other reasons which will be more thoroughly addressed herein, that is the law of the case; and in fact, after Judge McAvoy's April 15, 1995, MDO, in a revised pre-trial stipulation filed with the court on May 1, 1995, the parties agreed "[t]hat the law of the case is that the basis of federal jurisdiction ..., is diversity (28 U.S.C. § 1332) as to the survival action under § 11–3.2 of the New York Estates Powers and Trusts Law...." Revised Pre–Trial Stipulation at 1, ¶ 1 (citations omitted), Docket Entry # 168.

### *DISCUSSION*

■ Before addressing the merits of the jury trial issue, the court must consider the timeliness of this motion; that is whether at this late date the court should entertain what it deems to be a reconsideration motion by Cornell. Clearly it would have been preferable for Cornell to have timely moved for reconsideration as Local Rule 7.1(g) allows. (As an aside, the court notes that Fed. R.Civ.P. 60(b), which allows, in some instances, for reconsideration of final judgments not more than one year after the judgment, does not come into play here because the disputed jury trial order is non-final.) The court has determined, however, that under all of the circumstances, it will exercise its plenary power to reconsider Judge McAvoy's non-final order as to the propriety of a jury trial in this case. *See Lewis v. Grinker,* 660 F.Supp. 169, 170 n. 1 (E.D.N.Y.1987) (citation omitted) ("Since no final judgment has been entered in this case, the decision whether or not to reconsider a non-final order is within the plenary power of this Court."). This is

fully consistent with the " '[w]ell-established [rule] that the interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment[.]' " *Conrad v. Beck–Turek, Ltd., Inc.*, 891 F.Supp. 962, 967 (S.D.N.Y.1995) (quoting *In re United States*, 733 F.2d 10, 13 (2nd Cir.1984)) (emphasis added).

■ The next issue is whether, as plaintiff contends, the law of the case doctrine bars reconsideration by this court of Judge McAvoy's April 15, 1995, MDO. As the Second Circuit recently stated, "Under the doctrine of law of the case, 'a legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.' " *North River Ins. Co. v. Phila. Reinsurance Corp.*, 63 F.3d 160, 164 (2nd Cir.1995) (quoting *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 250 (D.C.Cir.1987)). This doctrine has its conceptual underpinnings in "the jurisprudential desire to maintain consistency and avoid reconsideration of matters once decided during the course of a single lawsuit." *Scottish Air. Intern. v. British Caledonian Group*, 152 F.R.D. 18, 24 (S.D.N.Y.1993) (citations omitted); *see also Dictograph Products Co. v. Sonotone Corp.*, 230 F.2d 131, 135 (2nd Cir. 1956) (L. Hand, J.) ("[T]here is no imperative duty to follow the earlier ruling—only the desirability that suitors shall, so far as possible, have reliable guidance how to conduct their affairs.").

However, the "[l]aw of the case is not a commandment etched in stone." *Childress v. Taylor*, 798 F.Supp. 981, 993 (S.D.N.Y.1992); *see also Conrad, supra*, 891 F.Supp. at 967 (internal quotations and citations omitted) ("The doctrine is not an inviolate rule of law but merely expresses the general practice of refusing to reopen what has been decided."). It is a discretionary doctrine "and 'does not constitute a limitation on the court's power.' " *Id.* (quoting *United States v. Birney*, 686 F.2d 102, 107 (2nd Cir.1982)); *see also DiLaura v. Power Authority of State of New*

*York*, 982 F.2d 73, 76 (2d Cir.1992) (same). Thus, when a court is asked to reconsider its own prior rulings, under the "more flexible branch" of the law of the case doctrine, it may do so "when those previous decisions were substantially erroneous or when reconsideration is necessary to avoid injustice." *Scottish Air*, 152 F.R.D. at 25 (internal quotations and citations omitted). "Generally, however, the law of the case counsels against reconsideration absent compelling circumstances, including an intervening change of law, the availability of new evidence, or to correct a clear error or prevent manifest injustice." *Id.* (internal quotations and citations omitted). Consequently, although "[a] court should be loathe to revisit an earlier decision[,]" *North River*, 63 F.3d at 165 (internal quotations and citations omitted), and although it should exercise its underlying power to reconsider earlier rulings "sparingly," *id.* (internal quotations and citations omitted), as the foregoing demonstrates, there are certain circumstances where reconsideration is appropriate.

■ What is more, the fact that the present case has been reassigned to this court does not preclude reconsideration by this court because non-final district court orders and rulings " '**may be modified to the same extent if the case is reassigned to another judge.**' " *Conrad, supra*, 891 F.Supp. at 967 (quoting *In re United States*, 733 F.2d at 13 (emphasis added)). That is so because " '[j]udges of coordinate jurisdiction are not bound by each others rulings, but are free to disregard them if they so choose.' " *Id.* (quoting *Birney, supra*, 686 F.2d at 107). "The only limitation upon that general rule is that 'prejudice not ensue to the party seeking the benefit of the doctrine … In this context, prejudice does not mean the harm which results from a failure to apply the doctrine; rather, it refers to a lack of sufficiency of notice and an opportunity to prepare armed with the knowledge that one judge is disregarding the ruling of another.' " *Id.* at 967–968 (quoting *Birney*, 686 F.2d at 107).

■ There is no prejudice to the plaintiff in this case because she was given adequate notice and opportunity to respond to this

motion, both orally and in writing. Furthermore, because as previously mentioned the parties have been sparring over this jury trial issue off and on throughout this litigation, plaintiff has created an ample record as to her legal position on this issue, and this court is fully apprised of her position from her prior and recent submissions, as well from oral argument. Lastly, reconsideration of the jury trial issue will save the court and the parties the time and expense of relitigating this action before the court if it is later determined that plaintiff was not entitled to a jury. *See Conrad, supra,* 891 F.Supp. at 968 ("Reconsideration of the issues raised by Skinner's Bar will save the Court and the parties the time and expense of litigating purely legal claims that, even in the event of trial, could not be submitted to a jury.").

Having determined that this court may reconsider the non-final order of the transferor court that plaintiff is entitled to a jury trial, the court is now free to consider whether, as Cornell suggests, that determination constitutes a clear error of law and/or creates manifest injustice which would justify departure from the law of the case doctrine.

■ As mentioned earlier, in his most recent decision addressing the jury trial issue, Judge McAvoy held that plaintiff's remaining two causes of action are both properly submitted to a jury. Judge McAvoy offered several reasons for that conclusion. First, he pointed out that in a previous ruling he had held "under DOHSA, where, as here, the tortfeasor is neither the owner nor operator of the vessel implicated in the tort, the survival statute of the tortfeasor's state controls." MDO at 2 (citations omitted). From there, Judge McAvoy extrapolated that "DOHSA does not preclude plaintiff from asserting her state survival claim. . . ." *Id.* Judge McAvoy also explained that because, in his view, plaintiff presented a DOHSA claim "joined with a viable state statutory survival claim," plaintiff was entitled to rely upon a line of cases which support the proposition that "[w]hen claims carrying the right to a jury trial are joined with admiralty claims those claims may be tried to a jury." *Id.* at 2–3 (citations omitted) (emphasis added). Third, Judge McAvoy distinguished

three cases from this Circuit, upon which Cornell relied and continues to rely: *Preston v. Frantz,* 11 F.3d 357 (2nd Cir.1993), *cert. dismissed,* —— U.S. ——, 115 S.Ct. 31, 129 L.Ed.2d 928 (1994); *Wahlstrom v. Kawasaki,* 4 F.3d 1084 (2nd Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1060, 127 L.Ed.2d 380 (1994); and *Deniston v. Boeing,* 87–CV–1205, 1991 WL 39194, 1991 U.S.Dist. LEXIS 3440 (N.D.N.Y. March 22, 1991). According to Judge McAvoy, those three cases are distinguishable because those plaintiffs "joined their maritime wrongful death claims with judge-made *general federal maritime survival* actions." *Id.* at 3 (citations omitted) (emphasis added). Finally, Judge McAvoy cited reasons of judicial economy, and the fact that both causes of action arise out of the same set of operative facts, as justification for proceeding with this case as a jury trial. *See id.* at 4.

After carefully considering that decision by Judge McAvoy, as well as the parties' respective arguments, the court is forced to conclude that this is one of those rare instances when it cannot, and indeed should not, adhere to the law of the case as established by the preceding judge. This court has a fundamental disagreement with Judge McAvoy as to the *nature of plaintiff's* fifth cause of action, wherein she seeks to recover under "General Maritime Law" essentially for decedent's pain and suffering from the time of the accident until he died. *See* Amended Complaint at 18, ¶¶ 59 and 60. Even though there is no mention in that cause of action of a state survival statute, Judge McAvoy started from the assumption that that cause of action is based upon state law. As will be more fully explained in a moment, however, the Second Circuit has explicitly held that "the development of a general maritime law survival action necessarily precludes the application of state survival statutes." *Preston,* 11 F.3d at 358. Thus, in this court's opinion, after *Preston,* plaintiff Mayer is not free to assert a claim in this case based upon a state survival statute such as section 11–3.2 of the New York Estates Powers and Trusts Law. Any survival claim she may wish to pursue must be based upon general maritime survival law.

This distinction between the way Judge McAvoy characterizes plaintiff's fifth cause of action and the way this court characterizes such cause of action explains why this court has reached a different conclusion than did Judge McAvoy. Judge McAvoy believes that plaintiff's fifth cause of action is based upon state survival law, which would enable plaintiff to obtain a jury trial. In this court's opinion, however, *Preston* forecloses the availability of a state law survival action because of the development of a general maritime law survival action. Indeed, the Second Circuit expressly said as much when it explained in *Preston*, "as the expansion of general maritime law remedies for wrongful death ... has circumscribed the application of state wrongful death statutes in admiralty, ..., so the development of a general maritime law survival action necessarily precludes the application of state survival statutes." 11 F.3d at 358 (citations omitted). Further, the Court soundly reasoned, " 'Without such preclusive effect, "the tensions and discrepancies" resulting from application of state remedial statutes could not be removed.' " *Id.* (quoting *Wahlstrom,* 4 F.3d at 1089) (quoting in turn *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 401, 90 S.Ct. 1772, 1788, 26 L.Ed.2d 339 (1970)). Consequently, the Second Circuit in *Preston* explicitly rejected the plaintiffs' argument "that state law survival claims traditionally are permitted in federal admiralty actions[.]" *Id.* (citations omitted).

Plaintiff Mayer attempts to limit the application of *Preston* to its facts by pointing out that the plaintiffs therein sought recovery under Connecticut's survival statute which, unlike the general maritime survival action, allows for recovery of lost future earnings. Plaintiff further notes that, in contrast, New York's survival statute, upon which she relies, does not allow for recovery of lost future earnings, and thus is not preempted by general maritime survival law. Given the *Preston* Court's broad language though, this court does not believe that that factual distinction renders *Preston* inapplicable here. There is nothing in *Preston* suggesting that the Court intended to limit its holding therein to situations where the remedies available under a state survival statute are at odds with those available under a general maritime law survival action. Thus, given the *Preston* Court's unequivocal language, in this court's opinion, as already noted, the only possible basis for plaintiff's fifth cause of action is an action premised upon federal general maritime survival law. Consequently, plaintiff's only two remaining causes of action—one based upon DOHSA and the other based upon general maritime survival law—are both based in admiralty law. Plaintiff Mayer is not entitled to a jury trial, therefore, because jury trials are not available in admiralty actions. *See, e.g., Complaint of Great Lakes Dredge & Dock Co.,* 895 F.Supp. 604, 608 (S.D.N.Y.1995) (citations omitted); and *McAleer v. Smith,* 791 F.Supp. 923, 930 (D.R.I.1992) (citation omitted) ("Admiralty claims, including those for conscious pain and suffering, and DOHSA claims are generally tried by the Court sitting without a jury.").

Furthermore, the court agrees with Cornell that the cases cited by Judge McAvoy for the proposition that when admiralty claims are joined with claims which carry the right to a jury, the right to a jury prevails, are not dispositive here. That is so because although he correctly stated the general rule of law in that regard, Judge McAvoy failed to take into account a critical distinction between those cases and the present one: in each of those cases the plaintiffs had at least one cause of action, separate and apart from admiralty, which gave them an independent jurisdictional basis, along with the right to a jury trial. For example, in *In re Korean Air Lines Disaster of Sept. 1, 1983,* 798 F.Supp. 755 (E.D.N.Y.1992), the court had concurrent jurisdiction; there was federal question jurisdiction based upon the Warsaw Convention, which entitled plaintiff to a jury trial, as well as admiralty jurisdiction based upon DOHSA. Likewise, the plaintiffs in *In re Air Crash Disaster Near Honolulu, Hawaii,* 783 F.Supp. 1261 (N.D.Cal.1992), were entitled to a jury trial because they all asserted viable claims under the Warsaw Convention. *Id.* at 1266. They did not invoke the court's admiralty jurisdiction. By contrast, as previously explained, the only remaining causes of action in this case are both admiralty based.

Because under *Preston* plaintiff Mayer cannot maintain a state survival cause of action, it stands to reason that she is not entitled to invoke the court's diversity jurisdiction so as to gain the right to a jury trial in this DOHSA based admiralty action. *See Thornhill v. Otto Candies, Inc.*, 94–1479, 1994 WL 532591, at * 4, 1994 U.S.Dist. LEXIS 13861, at *15 (E.D.La. Sept. 27, 1994) (plaintiffs not entitled to jury trial for DOHSA claims and general maritime law survival actions).

 The court is well aware of the parties' revised pre-trial stipulation mentioned earlier. It is plaintiff's position that that stipulation standing alone is dispositive of the current reconsideration motion on the jury trial issue. The court disagrees. The court has an independent obligation to examine the basis for its jurisdiction, *see Lebron v. National Railroad Passenger Corp.*, 69 F.3d 650, 659 (2nd Cir.1995), and may do so at any point in the litigation. Therefore, the parties are not free to stipulate (if, indeed, that is what they stipulated to here) to a jurisdictional basis which is not available in law. Accordingly, the court does not find that the parties' revised pre-trial stipulation requires this court to ignore its obligation to independently ascertain the jurisdictional basis for plaintiff's remaining causes of action.

For all of the foregoing reasons, the court is persuaded that given the basis for plaintiff's remaining two causes of action, to allow Judge McAvoy's April 15, 1995, MDO to stand would result in clear error and/or manifest injustice. In particular, as the previously discussed case law makes clear, at least in this Circuit, the only possible basis for plaintiff's fifth cause of action is as a general maritime survival law claim. And because such claim is grounded in admiralty, clearly plaintiff is not entitled to a jury trial with respect thereto.

■ Before concluding, the court notes that it is fully cognizant of case authority supporting the proposition that DOHSA does not preempt state survival claims, and hence such claims may be tried to a jury. *See, e.g., Palischak v. Allied Signal Aerospace Co.*, 893 F.Supp. 341, 348–351 (D.N.J.1995); and *Mynatt v. Heine*, 89–0748, 1991 WL 45734, at *4 (D.D.C. March 21, 1991). However, even if that was the law in this Circuit at one time, it is not now. The Second Circuit in *Preston* unequivocally held that the availability of a general maritime law survival action precludes a state law survival action. Obviously, as a district court sitting within the Second Circuit, this court is bound to follow *Preston* with all of its ramifications; and it is free to disregard authority to the contrary outside this Circuit. Moreover, as the court pointed out in *Palischak*, where, interestingly, it opined that "the better view is that the survival action arises from general maritime law," as opposed to arising under state survival statutes, "[i]n most circuits," where a survival action arises under general maritime law, "the entire case could be heard by a judge sitting without a jury." 893 F.Supp. at 351 n. 11 (and discussion therein at 348–49). Thus, for all of these reasons, the court holds that this case will proceed to trial on Wednesday, December 6, 1995, at 10:00 a.m. **without** a jury.

IT IS SO ORDERED.