22-1687-cv
*Gordon Springs v. City of New York, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of January, two thousand twenty-four.

Present:
> DEBRA ANN LIVINGSTON,
> > *Chief Judge*,
> AMALYA L. KEARSE,
> DENNY CHIN,
> > *Circuit Judges*.

———————————————————————————

GORDON SPRINGS,

> *Plaintiff-Appellant*,

> v.                                                     22-1687-cv

THE CITY OF NEW YORK,

> *Defendant-Appellee*,

FIRE COMMISSIONER DANIEL A. NIGRO (Individually And In His Respective Capacity As The Commissioner of the Fire Department of The City of New York), LIEUTENANT EDWARD VREELAND (Individually And In His Respective Capacity As An Acting Officer of the Fire Department of New York), PEDRO ARISTY, CHARLES SWIFT, AND PETER GRILLO (Individually And In Their Respective Capacities As

1

Members Of The Fire Department Of The City of
New York),

*Defendants.*[1]

_____

| | |
|---|---|
| For Plaintiff-Appellant: | KENNETH F. MCCALLION, McCallion & Associates, LLP, New York, NY. |
| | |
| For Defendant-Appellee: | AMY MCCAMPHILL (Benjamin H. Pollack, Richard Dearing, Claude S. Platton, Devin Slack *on the brief*), Assistant Corporation Counsel *on behalf of* HON. SYLVIA O. HINDS-RADIX, Corporation Counsel, City of New York. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Colleen McMahon, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the case is **REMANDED** with instructions to amend *nunc pro tunc* as set forth below. The judgment, as amended, is **AFFIRMED.**

### 1. *Nunc Pro Tunc Amendment of the Judgment*

Gordon Springs ("Springs"), a former firefighter with the New York City Fire Department ("FDNY"), filed suit on January 20, 2017 in the Southern District of New York against his previous employer, Defendant-Appellee the City of New York ("City"), and five individuals at the FDNY, alleging 19 counts of, *inter alia*, harassment, discrimination, and retaliation arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law, and the New York City Human Rights Law. Springs named as defendants the FDNY Commissioner Daniel Nigro and FDNY Lieutenant Edward Vreeland, along with three individual firefighters named Charles Swift, Peter Grillo, and Pedro Aristy.

---

[1] The Clerk of the Court is directed to amend the official caption accordingly.

In March 2019, then-District Judge Alison Nathan granted summary judgment in favor of the City on virtually all counts, except those related to Springs's Title VII retaliation claims. The court further dismissed all claims against Commissioner Nigro and Lieutenant Vreeland and terminated them from the litigation. With respect to the individual firefighters, the court dismissed all federal claims against Swift and Grillo, but allowed Springs's state-law claims against them to proceed.[2]

Months later, Springs's lawsuit was assigned to District Judge Donald E. Walter of the Western District of Louisiana, who sat by designation in the Southern District of New York. After conferencing with the parties in November 2019, Judge Walter ordered *sua sponte* that Springs's retaliation claims against the City be tried first, separately from his remaining claims against the three individual firefighters. The following day, Springs moved by letter motion for a complete and voluntary dismissal of all remaining claims against the individual firefighters. The letter motion stated that Springs had agreed to "release . . . Aristy from the federal claims under 42 U.S.C. § 1981, 1983, 1985 and 1986"; that "[a]ll counsel agree[d]" that the claims against the individual defendants should "be discontinued in the federal court"; that "[w]ith the dismissal of the federal claims, only the state pendent claims [would] remain" against all defendants; and that Springs wished to "preserv[e] his rights to proceed on the remaining state causes of action in state court." Letter Motion, *Springs v. City of New York et al.*, No. 17-cv-451 (S.D.N.Y. Nov. 12, 2019), ECF No. 131. The court granted Springs's motion, stating that the federal claims against Aristy were dismissed with prejudice and that "the remaining state law claims against

---

[2] Pedro Aristy did not move for summary judgment but filed an answer to Springs's complaint on July 11, 2017. Accordingly, the district court's ruling on summary judgment did not apply to him, and the federal claims against him remained.

individual defendants [were] DISMISSED WITHOUT PREJUDICE." Order, *Springs v. City of New York et al.*, No. 17-cv-451 (S.D.N.Y. Nov. 15, 2019), ECF No. 133. As a result of the court's order, the sole remaining defendant in the case was the City. The only remaining claims against the City were the retaliation claims. Trial against the City did not commence until July 6, 2022, after the case had been reassigned again. Following the four-day trial, the district court (McMahon, *J.*) entered a final judgment dismissing Springs's complaint on the basis that the jury "returned a verdict in favor of Defendants on all claims."[3] Judgment, *Springs v. City of New York et al.*, No. 17-cv-451 (S.D.N.Y. Jul. 28, 2022), ECF No. 192.

The judgment's language could be read as a dismissal on the merits after trial of all Springs's claims against all the defendants. Accordingly, we instruct the district court to enter an amended final judgment, *nunc pro tunc*, reflecting (a) the merits dismissals of all claims against Nigro and Vreeland with prejudice, (b) the merits dismissals of the federal claims against Swift, Grillo, and Aristy with prejudice, (c) the merits dismissals of the claims against the City, whether on summary judgment or after trial, all with prejudice, and (d) the voluntary dismissals of the non-federal claims against Swift, Grillo, and Aristy without prejudice. *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 140 S. Ct. 696, 700–701 (2020) (explaining that federal courts may issue *nunc pro tunc* orders to correct inadvertent errors in the record).

---

[3] The district court made clear in its charge to the jury that "[t]he only defendant [in the case] is the City of New York," and that "[Springs's] case concerns only allegations that [he] was subjected to retaliation by his employer, the New York Fire Department." Tr. Transcript, *Springs*, No. 17-cv-452 (S.D.N.Y. Jul. 14, 2022), ECF No. 190. At the same time, the court's final judgment states that the jury found in favor of "the Defendants" on all claims and dismisses Springs's complaint.

### 2. *Plaintiff-Appellant's Appeal*

On appeal, Springs does not challenge the dismissal of the claims asserted against any of the individual firefighters, but urges that his right to a fair trial against the City was prejudiced due to (1) the November 2019 order bifurcating trial of his claims against the City and individual firefighters Swift, Grillo, and Aristy, and (2) the trial judge's jury instructions and remarks made in the presence of the jury that allegedly created an impression of partiality against Springs. As to these claims, we set forth the underlying facts, the procedural history, and the issues on appeal below only insofar as necessary to explain our decision to affirm the judgment, as amended *nunc pro tunc*.

### I. *Bifurcation*

We review a district court's decision to deny or grant a motion to bifurcate trials for abuse of discretion. *Amato v. City of Saratoga, N.Y.*, 170 F.3d 311, 316 (2d Cir. 1999). Springs mounts several challenges related to the bifurcation order. For the following reasons, we conclude that none are meritorious.

Springs first contends that Judge Nathan had previously determined that the retaliation claims against the City were "logically related" to the claims against Swift, Grillo and Aristy, and that Judge Walter's *sua sponte* order bifurcating the claims into separate trials was error that "contradicted the sound reasoning" of the prior judge. Appellant Br. at 21–22. We disagree. When a case is reassigned to another judge, "[t]here is no imperative duty to follow [an] earlier [interlocutory] ruling." *In re United States*, 733 F.2d 10, 13 (2d Cir. 1984) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 54(b) (stating that interlocutory orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). And in any event, Judge Nathan's determination that the harassment and retaliation

5

claims were "logically related" to each other was made in the context of addressing the City's argument that the claims should be severed pursuant to Federal Rule of Civil Procedure 21, which concerns misjoinder. Judge Nathan separately denied the City's request for bifurcation, pursuant to Rule 42(b), but Judge Walter was entitled to revisit that determination and order separate trials to "further convenience, avoid prejudice, or promote efficiency." *Amato*, 170 F.3d at 316 (noting that separate trials may be appropriate "where, for example, the litigation of the first issue might eliminate the need to litigate the second issue" and "where one party will be prejudiced by evidence presented against another party"); *see also* Fed. R. Civ. P. 42(b). We discern no abuse of discretion in the district court's decision to order separate trials on its own accord.

Springs further asserts that the November 2019 bifurcation order was highly prejudicial because it "effectively forced" Springs to "try a severed case only against the City on the retaliation claims," and deprived the jury of "the benefit of having evidence of the underlying discriminatory conduct of the Individual Defendants." Appellant Br. at 19. We again disagree. As Springs concedes in his reply brief, the trial judge did, in fact, permit him to testify, over the objection of opposing counsel, "to the actions taken by the Individual Defendants that led him to file the EEOC complaints triggering the retaliatory actions against him," Appellant Reply Br. at 4, and the trial record reflects that the court permitted "general description[s]" of the incidents that precipitated Springs's EEOC complaints. App'x 497. Springs may now claim that this allowance was "insufficient," Appellant Reply Br. at 4, but he cannot claim that the jury was deprived of factual background in assessing his retaliation claims against the City.

We similarly see no basis for disturbing the jury verdict on the ground that Springs was initially denied a continuance when the bifurcation order was entered on the eve of the originally scheduled joint trial. At the start, the claims against the City did not proceed to trial for two and

6

a half years.   Any argument of disadvantage as to his retaliation claims against the City is, thus, without merit.   *See Dow Chem. Pac. Ltd. v. Rascator Mar. S.A.*, 782 F.2d 329, 341–42 (2d Cir. 1986) (noting that party challenging denial of an adjournment must establish that "it substantially impaired presentation of [the party's] case").   Springs argues that he was prejudiced by the court's denial of his request to adjourn the trial against Swift, Grillo and Aristy after his counsel received 750 pages of discovery only the weekend before trial.   He contends that his counsel was left with the "Hobson's choice" of either going to trial in 48 hours without the opportunity to fully consider the new material or dismissing his surviving claims against these individual firefighters. Appellant Reply Br. at 6.   But to the extent Springs asserts that his would-be trial against the individual firefighters was prejudiced by a combination of the bifurcation order and the denial of a continuance, that claim is moot.   An "intentional relinquishment or abandonment of a known right" constitutes a "waiver" that extinguishes the right.   *United States v. Olano*, 507 U.S. 725, 733 (1993) (internal quotation marks omitted); *Ali v. Federal Insurance Co.*, 719 F.3d 83, 89 (2d Cir. 2013) ("[P]arties cannot appeal a joint stipulation to voluntary dismissal, entered unconditionally by the court pursuant to a settlement agreement" (internal quotation marks omitted)).   Springs voluntarily dismissed his claims against Swift, Grillo and Aristy after "great deliberation and research" and consultation with opposing counsel.   App'x 445.   Accordingly, none of Springs's appellate contentions regarding any defendant other than the City are cognizable.

## II.    The Jury Instructions and Trial Judge's Comments

Springs next contends that the district court's jury instructions and certain of the district court's statements during trial exhibited judicial bias, depriving him of a fair trial.   During a sidebar with the parties, the trial judge admonished Springs's counsel for permitting Springs to testify to matters that the court had previously ruled inadmissible.   The judge subsequently

7

instructed the jury to disregard that part of the testimony because it concerned a different lawsuit "[t]hat . . . was dismissed." App'x 617–18. Springs asserts that this instruction was factually inaccurate and highly prejudicial because it suggested to the jury "that plaintiff was a serial filer of baseless federal claims and that they should do what a federal judge had already done, which was to summarily dispose of plaintiff's claims in this case." Appellant Br. at 37–38. In addition, Springs argues that the trial judge's efforts to instruct him to answer questions on cross examination crossed the line of impartiality when the judge told him not to "play games" in responding to a question and repeatedly ordered him to answer questions "yes or no" and not seek to "outsmart" opposing counsel. App'x 621, 627–28. For the following reasons, we disagree that these interactions deprived Springs of a fair trial.

First, because Springs did not object to the jury instruction at trial, we review for fundamental error. *DeFalco v. Bernas*, 244 F.3d 286, 317 (2d Cir. 2001).[4] An error is fundamental when it is "so serious and flagrant that it goes to the very integrity of the trial." *Travelers Indem. Co. v. Scor Reinsurance Co*., 62 F.3d 74, 79 (2d Cir. 1995) (internal quotation marks omitted). Because Springs's prior lawsuit was dismissed with prejudice for failure to state a claim, the judge's instruction, contrary to Springs's argument, was factually correct. We see no basis for concluding, moreover, that the instruction in any way draws into question the integrity of the trial. Further to the point, the trial judge provided a curative instruction, after the defense's case-in-chief, disavowing any view on the evidence.

---

[4] The fundamental error standard "is narrower than the plain error doctrine applicable to criminal cases." *DeFalco*, 244 F.3d at 317 (quoting *Travelers Indem. Co. v. Scor Reinsurance Co.*, 62 F.3d 74, 79 (2d Cir. 1995)); *see also United States v. Salameh*, 152 F.3d 88, 145 (2d Cir. 1998) ("When a defendant fails to object to the curative instruction at trial, we review the court's instruction for plain error.").

Second, as to the comments made during testimony by Springs, while we recognize that a judge should strive to create an "atmosphere of perfect impartiality," *Shah v. Pan Am. World Services, Inc.*, 148 F.3d 84, 98 (2d Cir. 1998) (internal quotation marks omitted), the law assures litigants a fair trial, not a perfect one, *Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431, 436 (2d Cir. 1993). Thus "[i]n reviewing a challenge to a trial judge's conduct, we determine not whether the trial judge's conduct left something to be desired, or even whether some comments would have been better left unsaid[, but] . . . whether the judge's behavior was so prejudicial that it denied [a party] a fair, as opposed to a perfect, trial." *Shah*, 148 F.3d at 98 (internal quotation marks omitted, second and third alterations in original). We are not persuaded that the record evinces judicial bias against Springs, much less so as to draw into question the fairness of the proceeding. Throughout the four-day trial, Judge McMahon made evidentiary rulings sometimes in favor of Springs and other times in favor of the City. The trial judge was mindful to provide an instruction denying any view of the evidence or the credibility of the witnesses. We have no reason to believe that the jury would disregard this instruction. *See United States v. White*, 552 F.3d 240, 250 (2d Cir. 2009) (noting that "[w]e ordinarily presume that the jury adheres to curative instructions and see no reason to depart from that general rule").

In sum, we conclude that the trial judge's jury instruction and comments made during Springs's testimony did not deprive him of a fair trial. His argument to the contrary is without merit.

\*     \*     \*

We have considered Springs's remaining arguments and find them to be without merit. Accordingly, we **REMAND** with instructions to amend the final judgment *nunc pro tunc* in a manner consistent with this summary order. As to the challenge by Springs on appeal to the

9

dismissal of his retaliation claims against the City, we **AFFIRM** the judgment of the district court, as amended.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk
